# EXHIBIT A



2/27/2019

Mario Romero
CRC - CA (Los Angeles)
515 S. Figueroa Street
Suite 600
Los Angeles, CA  90071

**RE: Excel Test Prep**
     **PolicyNo.: EKS3281725**

Dear Mario:

Attached please find the following items for the policy for the above mentioned account. Review and report any discrepancies to our office right away.

- **Declarations**  EKS-D-1 (11/16)
- **California Policyholder Notice**  NOTX0015CA (02/00)
- **California Surplus Lines Notice**  NOTS0021CA (07/11)
- **General Terms and Conditions**  EKS-1 (04/08)
- **Employment Practices Coverage Section**  EKS-P-2 (04/08)
- **Allocation Provision**  EKS-782 (01/09)
- **Amend Definition of Employee to Include Interns**  EKS-1137 (10/12)
- **Amend Definition of Insured Persons**  EKS-167 (04/08)
- **Amend Definition of Wrongful Act**  EKS-1136 (10/12)
- **Amend Discovery Election-90 Days**  EKS-787 (01/09)
- **Amend Notice of Circumstances**  EKS-7 (04/08)
- **Amend Notice Provision - EPL**  EKS-9 (04/08)
- **Amend Notice Provision 60 Days - EPL**  EKS-832 (05/09)
- **Amend Other Insurance - EPL**  EKS-810 (01/09)
- **Amend Subrogation Provision - Final Judgment**  EKS-784 (01/09)
- **Amend Third Party**  EKS-15 (04/08)
- **Amend Warranty Provision Non-Rescindable Coverage**  EKS-16 (04/09)
- **Employee Privacy Coverage with Sub-Limit**  EKS-929 (02/11)
- **Immigration Claim Endorsement**  EKS-785 (01/09)
- **Removal of Alternative Dispute Resolution Provision**  EKS-37 (04/08)
- **Tolling or Waiving the Statute of Limitations**  EKS-1122 (08/12)
- **Wage and Hour Claim Costs, Charges and Expenses Only Endorsement**  EKS-1144 (12/12)
- **Amendatory Endorsement - California**  UTS-253-CA (01/97)
- **Service of Suit Clause**  UTS-9g (05/96)
- **Policyholder Disclosure Notice of Terrorism Insurance Coverage**  NOTS0163CW (02/15)

Thank you.





**Jamie-Lyn Schook**



Underwritten by: Scottsdale Insurance Company
Home Office: One Nationwide Plaza • Columbus, Ohio 43215
Administrative Office: 8877 North Gainey Center Drive • Scottsdale, Arizona 85258
1-800-423-7675 • A Stock Company

# BUSINESS AND MANAGEMENT INDEMNITY POLICY DECLARATIONS

**THE EMPLOYMENT PRACTICES, DIRECTORS AND OFFICERS AND COMPANY, FIDUCIARY, BUSINESSOWNERS, PRIVACY PLUS, TECHNOLOGY, MEDIA AND PROFESSIONAL SERVICES AND MISCELLANEOUS PROFESSIONAL SERVICES COVERAGE SECTIONS OF THIS POLICY, WHICHEVER ARE APPLICABLE, COVER ONLY CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD OR, IF ELECTED, THE EXTENDED PERIOD AND REPORTED TO THE INSURER PURSUANT TO THE TERMS OF THE RELEVANT COVERAGE SECTION. THE CRIME COVERAGE SECTION, IF APPLICABLE, APPLIES ONLY TO LOSS DISCOVERED DURING THE POLICY PERIOD. PLEASE READ THIS POLICY CAREFULLY.**

**THE LIMITS OF LIABILITY AVAILABLE TO PAY INSURED LOSS SHALL BE REDUCED BY AMOUNTS INCURRED FOR COSTS, CHARGES AND EXPENSES, UNLESS OTHERWISE PROVIDED HEREIN. AMOUNTS INCURRED FOR COSTS, CHARGES AND EXPENSES AND LOSS SHALL ALSO BE APPLIED AGAINST THE RETENTION AND DEDUCTIBLE AMOUNTS.**

**TERMS THAT APPEAR IN BOLDFACE TYPE HAVE SPECIAL MEANING. PLEASE REFER TO THE APPROPRIATE DEFINITIONS SECTIONS OF THIS POLICY.**

| Item 1. | **Parent Company** & Mailing Address: | Excel Test Prep<br>4160 Technology Dr<br>Fremont, CA  94538 | **Policy** No:<br>Agent No:<br>Renewal No:<br>Agent Name<br>& Mailing<br>Address: | EKS3281725<br>29406<br>EKS3243741<br>E-Risk Services, LLC<br>Northwest Professional Center<br>227 US Hwy 206<br>Suite 302<br>Flanders, NJ 07836-9174 |
|---|---|---|---|---|

Principal Address, if different from mailing address:

**Item 2.** **Policy Period**: From 2/7/2019 to 5/1/2020
12:01 A.M. local time at Principal Address shown above.

**Item 3.** Coverage Section and Limit of Liability

Employment Practices Coverage Section

1. Limit of Liability:
   a. $1,000,000 ____ aggregate for all **Loss**, subject to 1.b. and 1.c. immediately below.
   b. $1,000,000 ____ additional aggregate for all **Costs, Charges and Expenses**, subject to 1.c. immediately below.
   c. $2,000,000 ____ maximum aggregate for this Coverage Section.
2. Retention:
   a. $15,000 ____ each **Employment Practices Claim**
   b. $25,000 ____ each **Third-Party Claim**
3. **Continuity Date:** 1/8/2018
4. **Third Party** Coverage: Yes **X**    No ____

**Item 4.** Premium:    $8,329

**Item 5.** **Discovery Period** options:
1. One (1) year = 100% ____ of the premium

|  | 2. | Two (2) years = | 125% | of the premium |
|  | 3. | Three (3) years = | 150% | of the premium |

As provided in Section H. of the General Terms and Conditions, only one of the above **Discovery Period** options may be elected and purchased.

| Item 6. | **Run-Off Period**: | | | |
|  | 1. | One (1) year = | 110% | of the premium |
|  | 2. | Two (2) years = | 112% | of the premium |
|  | 3. | Three (3) years = | 115% | of the premium |
|  | 4. | Four (4) years = | 120% | of the premium |
|  | 5. | Five (5) years = | 122% | of the premium |
|  | 6. | Six (6) years = | 125% | of the premium |

As provided in Section I. of the General Terms and Conditions, only one of the above **Run-Off Period** options may be elected and purchased.

**Item 7.** Forms and Endorsements Effective at Inception of **Policy**:

EKS-D-1 (11/16), NOTX0015CA (02/00), NOTS0021CA (07/11), EKS-1 (04/08), EKS-P-2 (04/08), EKS-782 (01/09), EKS-1137 (10/12), EKS-167 (04/08), EKS-1136 (10/12), EKS-787 (01/09), EKS-7 (04/08), EKS-9 (04/08), EKS-832 (05/09), EKS-810 (01/09), EKS-784 (01/09), EKS-15 (04/08), EKS-16 (04/09), EKS-929 (02/11), EKS-785 (01/09), EKS-37 (04/08), EKS-1122 (08/12), EKS-1144 (12/12), UTS-253-CA (01/97), UTS-9g (05/96), NOTS0163CW (02/15)

**Item 8.** Notices to **Insurer**:

<u>Notice of Claims to:</u>

Nationwide Management Liability & Specialty

Attention: Claims Manager

7 World Trade Center, 37th Floor

250 Greenwich Street

New York, NY 10007

MLSReportALoss@nationwide.com

<u>Other Notices to:</u>

Nationwide Management Liability & Specialty

Attention: Claims Manager

7 World Trade Center, 37th Floor

250 Greenwich Street

New York, NY 10007

MLSReportALoss@nationwide.com

These Declarations, together with the **Application**, Coverage Sections, General Terms and Conditions, and any written endorsement(s) attached thereto, shall constitute the contract between the **Insured** and the **Insurer**.





Underwritten by: Scottsdale Insurance Company
Home Office: One Nationwide Plaza • Columbus, Ohio 43215
Administrative Office: 8877 North Gainey Center Drive •Scottsdale, Arizona 85258
1-800-423-7675 • A Stock Company

In Witness Whereof, the Company has caused this policy to be executed and attested.

Secretary                                      President

The information contained herein replaces any similar information contained elsewhere in the policy.

## Underwritten by Scottsdale Insurance Company

**CALIFORNIA POLICYHOLDER NOTICE**

**IMPORTANT INFORMATION FOR CALIFORNIA POLICYHOLDERS**

**In the event you need to contact someone about this policy for any reason, please contact your agent first. If you have additional questions, you may contact the insurance company issuing this policy at the following address and telephone number:**

      **8877 North Gainey Center Drive**
      **Scottsdale, Arizona 85258**
      **Telephone: 1-800-423-7675**

**If you have been unable to contact or obtain satisfaction from the company or agent, you may contact the California Insurance Department at:**

      **California Department of Insurance**
      **Consumer Affairs Unit**
      **300 South Spring Street, 9th Floor, South Tower**
      **Los Angeles, California 90013**
      **Telephone: 1-800-927-4357 or 213-897-8921 (out of state)**

**When contacting your agent, company or the Insurance Department, please have your policy number available.**



Underwritten by Scottsdale Insurance Company

## CALIFORNIA SURPLUS LINES NOTICE

### NOTICE TO CALIFORNIA INSURED

1. **THE INSURANCE POLICY THAT YOU [HAVE PURCHASED] [ARE APPLYING TO PURCHASE] IS BEING ISSUED BY AN INSURER THAT IS NOT LICENSED BY THE STATE OF CALIFORNIA. THESE COMPANIES ARE CALLED "NON-ADMITTED" OR "SURPLUS LINE" INSURERS.**

2. **THE INSURER IS NOT SUBJECT TO THE FINANCIAL SOLVENCY REGULATION AND ENFORCEMENT THAT APPLY TO CALIFORNIA LICENSED INSURERS.**

3. **THE INSURER DOES NOT PARTICIPATE IN ANY OF THE INSURANCE GUARANTEE FUNDS CREATED BY CALIFORNIA LAW. THEREFORE, THESE FUNDS WILL NOT PAY YOUR CLAIMS OR PROTECT YOUR ASSETS IF THE INSURER BECOMES INSOLVENT AND IS UNABLE TO MAKE PAYMENTS AS PROMISED.**

4. **THE INSURER SHOULD BE LICENSED EITHER AS A FOREIGN INSURER IN ANOTHER STATE IN THE UNITED STATES OR AS A NON-UNITED STATES (ALIEN)INSURER. YOU SHOULD ASK QUESTIONS OF YOUR INSURANCE AGENT, BROKER, OR "SURPLUS LINE" BROKER OR CONTACT THE CALIFORNIA DEPARTMENT OF INSURANCE AT THE FOLLOWING TOLL-FREE TELE-PHONE NUMBER: 1-800-927-4357. ASK WHETHER OR NOT THE INSURER IS LICENSED AS A FOREIGN OR NON-UNITED STATES (ALIEN) INSURER AND FOR ADDITIONAL INFORMATION ABOUT THE INSURER. YOU MAY ALSO CONTACT THE NAIC'S INTERNET WEB SITE AT WWW.NAIC.ORG.**



5. **FOREIGN INSURERS SHOULD BE LICENSED BY A STATE IN THE UNITED STATES AND YOU MAY CONTACT THAT STATES DEPARTMENT OF INSURANCE TO OBTAIN MORE INFORMATION ABOUT THAT INSURER.**

6. **FOR NON-UNITED STATES (ALIEN) INSURERS, THE IN-SURER SHOULD BE LICENSED BY A COUNTRY OUTSIDE OF THE UNITED STATES AND SHOULD BE ON THE NAIC'S INTERNATIONAL INSURERS DEPARTMENT (IID) LISTING OF APPROVED AGENT, BROKER, OR "SURPLUS LINE" BROKER TO OBTAIN MORE INFORMATION ABOUT THAT INSURER.**

7. **CALIFORNIA MAINTAINS A LIST OF APPROVED SURPLUS LINE INSURERS. ASK YOUR AGENT OR BROKER IF THE INSURER IS ON THAT LIST, OR VIEW THAT LIST AT THE INTERNET WEBSITE OF THE CALIFORNIA DEPARTMENT OF INSURANCE: <u>WWW.INSURANCE.CA.GOV</u>.**

8. **IF YOU, AS THE APPLICANT, REQUIRED THAT THE INSURANCE POLICY YOU HAVE PURCHASED BE BOUND IMMEDIATELY, EITHER BECAUSE EXISTING COVERAGE WAS GOING TO LAPSE WITHIN TWO BUSINESS DAYS OR BECAUSE YOU WERE REQUIRED TO HAVE COVERAGE WITHIN TWO BUSINESS DAYS, AND YOU DID NOT RECEIVE THIS DISCLOSURE FORM AND A REQUEST FOR YOUR SIGNATURE UNTIL AFTER COVERAGE BECAME EFFECTIVE, YOU HAVE THE RIGHT TO CANCEL THIS POLICY WITHIN FIVE DAYS OF RECEIVING THIS DISCLOSURE. IF YOU CANCEL COVERAGE, THE PREMIUM WILL BE PRORATED AND ANY BROKERS FEE CHARGED FOR THIS INSURANCE WILL BE RETURNED TO YOU.**

(California D-2)



## Underwritten by Scottsdale Insurance Company

A Stock Insurance Company, herein called the **Insurer**

### BUSINESS AND MANAGEMENT INDEMNITY POLICY

### GENERAL TERMS AND CONDITIONS

In consideration of the payment of premium, in reliance on the **Application** and subject to the Declarations, and terms and conditions of this **Policy**, the **Insurer** and the **Insureds** agree as follows

A. **SEVERABILITY OF GENERAL TERMS AND CONDITIONS**

These General Terms and Conditions apply to each and every Coverage Section of this **Policy**. The terms and conditions of each Coverage Section apply only to that Coverage Section and shall not be construed to apply to any other Coverage Section.

B. **DEFINITIONS**

Whenever used in this **Policy**, the terms that appear below in **boldface** type shall have the meanings set forth in this Definitions subsection of the General Terms and Conditions. However, if a term also appears in **boldface** type in a particular Coverage Section and is defined in that Coverage Section, that definition shall apply for purposes of that particular Coverage Section. Terms that appear in **boldface** in the General Terms and Conditions but are not defined in this Definitions subsection and are defined in other Coverage Sections of the **Policy** shall have the meanings ascribed to them in those Coverage Sections.

1. **Application** means all applications, including any attachments thereto, and all other information and materials submitted by or on behalf of the **Insureds** to the **Insurer** in connection with the **Insurer** underwriting this **Policy** or any policy of which this **Policy** is a renewal or replacement. All such applications, attachments, information, materials and documents are deemed attached to and incorporated into this **Policy**.

2. **Company** means:

   a. the **Parent Company**; and

   b. any **Subsidiary**,

   and includes any such organization as a debtor-in-possession or the bankruptcy estate of such entity under United States bankruptcy law or an equivalent status under the law of any other jurisdiction.

3. **Discovery Period** means one of the periods described in Item 5. of the Declarations which is elected and purchased pursuant to Section H. below.

4. **Domestic Partner** means any natural person qualifying as a domestic partner under the provision of any applicable federal, state or local law or under the provisions of any formal program established by the **Company**.

5. **Extended Period** means the **Discovery Period** or the **Run-Off Period,** if such provision is elected and purchased pursuant to Sections H. or I. respectively, below.

6. **Insurer** means the insurance company providing this insurance.

7. **Parent Company** means the entity first named in Item 1. of the Declarations.



8. **Policy** means, collectively, the Declarations, the **Application**, this policy form and any endorsements.

9. **Policy Period** means the period from the effective date and hour of the inception of this **Policy** to the **Policy** expiration date and hour as set forth in Item 2. of the Declarations, or its earlier cancellation date and hour, if any.

10. **Run-Off Period** means one of the periods described in Item 6. of the Declarations, which is elected and purchased pursuant to Section I. below.

11. **Subsidiary** means:

    a. any entity of which more than fifty percent (50%) of the outstanding securities representing the present right to vote for the election of such entity's directors or managers are owned by the **Parent Company**, directly or indirectly, if such entity:

        i. was so owned on or prior to the inception date of this **Policy**; or

        ii. becomes so owned after the inception date of this **Policy**; and

    b. any joint venture entity in which the **Parent Company**, or an entity described in a. above, has an exact fifty percent (50%) ownership of the interests of such joint venture entity and where, pursuant to a written joint venture agreement, the **Parent Company** or entity described in a. above solely controls the management and operations of such joint venture entity.

12. **Takeover** means:

    a. the acquisition by any person or entity of more than fifty percent (50%) of the outstanding securities of the **Parent Company** representing the present right to vote for the election of directors; or

    b. the merger or consolidation of the **Parent Company** into another entity such that the **Parent Company** is not the surviving entity.

All definitions shall apply equally to the singular and plural forms of the respective words.

C. **LIMITS OF LIABILITY, RETENTIONS AND DEDUCTIBLES**

1. The Limits of Liability, Retentions and Deductibles for each Coverage Section are separate Limits of Liability, Retentions and Deductibles pertaining only to the Coverage Section for which they are shown. The application of a Retention or Deductible to **Loss** under one Coverage Section shall not reduce the Retention or Deductible under any other Coverage Section, and no reduction in the Limit of Liability applicable to one Coverage Section shall reduce the Limit of Liability under any other Coverage Section.

2. In the event that any **Claim** is covered, in whole or in part, under two or more Insuring Clauses or more than one Coverage Section, the total applicable Retention or Deductible shall not exceed the single largest applicable Retention or Deductible. The largest applicable Retention or Deductible shall apply only once to such **Claim**.

D. **WARRANTY**

It is warranted that the particulars and statements contained in the **Application** are the basis of this **Policy** and are to be considered as incorporated into and constituting a part of this **Policy** and each Coverage Section.

By acceptance of this **Policy**, the **Insureds** agree that:

1. the statements in the **Application** are their representations, that such representations shall be deemed material to the acceptance of the risk or the hazard assumed by **Insurer** under this **Policy**, and that this **Policy** and each Coverage Section are issued in reliance upon the truth of such representations; and

2. in the event the **Application**, including materials submitted or required to be submitted therewith ,contains any misrepresentation or omission made with the intent to deceive, or contains any misrepresentation or



omission which materially affects either the acceptance of the risk or the hazard assumed by **Insurer** under this **Policy**, this **Policy**, including each and all Coverage Sections, shall be void ab initio with respect to any **Insureds** who had knowledge of such misrepresentation or omission.

E.  **CANCELLATION**

1.  By acceptance of this **Policy**, the **Insureds** hereby confer to the **Parent Company** the exclusive power and authority to cancel this **Policy** on their behalf. The **Parent Company** may cancel this **Policy** in its entirety or any of the applicable Coverage Sections individually by surrender thereof to the **Insurer**, or by mailing written notice to the **Insurer** stating when thereafter such cancellation shall be effective. The mailing of such notice shall be sufficient notice and the effective date of cancellation shall be the date the **Insurer** received such notice or any later date specified in the notice, and such effective date shall become the end of the **Policy** or applicable Coverage Section. Delivery of such written notice shall be equivalent to mailing.

2.  This **Policy** may be cancelled by the **Insurer** only for nonpayment of premium, by mailing written notice to the **Parent Company** stating when such cancellation shall be effective, such date to be not less than ten (10) days from the date of the written notice. The mailing of such notice shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the **Policy Period**. Delivery of such written notice by the **Insurer** shall be equivalent to mailing. If the foregoing notice period is in conflict with any governing law or regulation, then the notice period shall be deemed to be the minimum notice period permitted under the governing law or regulation.

3.  If this **Policy** or any Coverage Section is cancelled, the **Insurer** shall retain the pro rata proportion of the premium therefore. Payment or tender of any unearned premium by **Insurer** shall not be a condition precedent to the effectiveness of cancellation.

F.  **ESTATES, LEGAL REPRESENTATIVES, AND SPOUSES**

The estates, heirs, legal representatives, assigns, spouses and **Domestic Partners** of natural persons who are **Insureds** shall be considered **Insureds** under this **Policy**; provided, however, coverage is afforded to such estates, heirs, legal representatives, assigns, spouses and **Domestic Partners** only for a **Claim** arising solely out of their status as such and, in the case of a spouse or **Domestic Partner**, where the **Claim** seeks damages from marital community property, jointly held property or property transferred from the natural person who is an **Insured** to the spouse or **Domestic Partner**. No coverage is provided for any **Wrongful Act** of an estate, heir, legal representative, assign, spouse or **Domestic Partner**. All of the terms and conditions of this **Policy** including, without limitation, the Retentions and Deductibles applicable to **Loss** incurred by natural persons who are **Insureds** shall also apply to **Loss** incurred by such estates, heirs, legal representatives, assigns, spouses and **Domestic Partners**.

G.  **AUTHORIZATION CLAUSE**

By acceptance of this **Policy**, the **Parent Company** agrees to act on behalf of all **Insureds**, and the **Insureds** agree that the **Parent Company** will act on their behalf, with respect to the giving of all notices to **Insurer**, the receiving of notices from **Insurer**, the agreement to and acceptance of endorsements, the payment of the premium and the receipt of any return premium.

H.  **DISCOVERY PERIOD**

1.  If this **Policy** or any Coverage Section is cancelled or is not renewed by the **Insurer**, for reasons other than non-payment of premium or if the **Parent Company** elects to cancel or not to renew this **Policy** or a Coverage Section, then the **Parent Company** shall have the right, upon payment of an additional premium calculated at that percentage shown in Item 5. of the Declarations of the total premium for this **Policy,** or the total premium for the cancelled or not renewed Coverage Section, whichever is applicable, to purchase an extension of the coverage granted by this **Policy** or the applicable cancelled or not renewed Coverage Section with respect to any **Claim** first made during the period of time set forth in Item 5. of the Declarations after the effective date of such cancellation or, in the event of a refusal to renew, after the **Policy** expiration date, but only with respect to any **Wrongful Act** committed before such date. The **Parent Company** shall have the right to elect only one of the **Discovery Periods** set forth in Item 5. of the Declarations.

2.  As a condition precedent to the right to purchase the **Discovery Period** set forth in subsection H.1. above, the total premium for the **Policy** must have been paid. Such right to purchase the **Discovery Period** shall



terminate unless written notice, together with full payment of the premium for the **Discovery Period**, is received by **Insurer** within thirty (30) days after the effective date of cancellation, or, in the event of a refusal to renew, within thirty (30) days after the **Policy** expiration date. If such notice and premium payment is not so given to **Insurer**, there shall be no right to purchase the **Discovery Period**.

3.  In the event of the purchase of the **Discovery Period**, the entire premium therefore shall be deemed earned at the commencement of the **Discovery Period**.

4.  The exercise of the **Discovery Period** shall not in any way increase or reinstate the limit of **Insurer's** liability under any Coverage Section.

## I.  RUN-OFF COVERAGE

In the event of a **Takeover**:

1.  The **Parent Company** shall have the right, upon payment of an additional premium calculated at the percentage of the total premium for this **Policy** set forth in Item 6. of the Declarations, to an extension of the coverage granted by this **Policy** with respect to any **Claim** first made during the **Run-Off Period**, as set forth in Item 6. of the Declarations, but only with respect to any **Wrongful Act** committed before the effective date of the **Takeover** (herein defined as "Run-Off Coverage"); provided, however, such additional premium shall be reduced by the amount of the unearned premium from the date of the **Takeover** or the date of notice of the election of the Run-Off Coverage, whichever is later, through the expiration date set forth in Item 2. of the Declarations.

2.  The **Parent Company** shall have the right to elect only one of the periods designated in Item 6. of the Declarations. The election must be made prior to the expiration of the **Policy Period**. The right to purchase a **Run-Off Period** shall terminate on the expiration of the **Policy Period**.

3.  If a **Run-off Period** is elected and purchased:

    a.  Section E. above, is deleted in its entirety and neither the **Insureds** nor the **Insurer** may cancel this **Policy** or any Coverage Section thereof;

    b.  Section H. above, is deleted in its entirety; and

    c.  the maximum aggregate Limit of Liability of the **Insurer** for each Coverage Section purchased and set forth on the Declarations shall be twice the otherwise applicable maximum aggregate Limit of Liability set forth in Item 3. of the Declarations for such Coverage Section; provided, however, the maximum aggregate Limit of Liability of the **Insurer** in connection with any one **Claim** shall be amount originally shown as the maximum aggregate Limit of Liability for each Coverage Section purchased and set forth on the Declaration.

## J.  ALTERNATIVE DISPUTE RESOLUTION

The **Insureds** and the **Insurer** shall submit any dispute or controversy arising out of or relating to this **Policy** or the breach, termination or invalidity thereof to the alternative dispute resolution ("ADR") process described in this subsection.

Either an **Insured** or the **Insurer** may elect the type of ADR process discussed below; provided, however, that the **Insured** shall have the right to reject the choice by the **Insurer** of the type of ADR process at any time prior to its commencement, in which case the choice by the **Insured** of ADR process shall control.

There shall be two choices of ADR process: (1) non-binding mediation administered by any mediation facility to which the **Insurer** and the **Insured** mutually agree, in which the **Insured** and the **Insurer** shall try in good faith to settle the dispute by mediation in accordance with the then-prevailing commercial mediation rules of the mediation facility; or (2) arbitration submitted to any arbitration facility to which the **Insured** and the **Insurer** mutually agree, in which the arbitration panel shall consist of three disinterested individuals. In either mediation or arbitration, the mediator or arbitrators shall have knowledge of the legal, corporate management, and insurance issues relevant to the matters in dispute. In the event of arbitration, the decision of the arbitrators shall be final and binding and provided to both parties, and the award of the arbitrators shall not include attorneys' fees or other costs. In the event of mediation, either party shall have the right to commence arbitration in accordance with this section;



provided, however, that no such arbitration shall be commenced until at least sixty (60) days after the date the mediation shall be deemed concluded or terminated. In all events, each party shall share equally the expenses of the ADR process.

Either ADR process may be commenced in New York, New York or in the state indicated in Item 1. of the Declarations as the principal address of the **Parent Company**. The **Parent Company** shall act on behalf of each and every **Insured** in connection with any ADR process under this section.

K.  **TERRITORY**

Coverage under this **Policy** shall extend to **Wrongful Acts** taking place or **Claims** made anywhere in the world.

L.  **ASSISTANCE, COOPERATION AND SUBROGATION**

The **Insureds** agree to provide **Insurer** with such information, assistance and cooperation as **Insurer** reasonably may request, and they further agree that they shall not take any action which in any way increases **Insurer's** exposure under this **Policy**. In the event of any payments under this **Policy, Insurer** shall be subrogated to the extent of such payment to all of the **Insureds'** rights of recovery against any person or entity. The **Insureds** shall execute all papers required and shall do everything that may be necessary to secure and preserve such rights, including the execution of such documents as are necessary to enable **Insurer** effectively to bring suit or otherwise pursue subrogation in the name of the **Insureds**, and shall provide all other assistance and cooperation which **Insurer** may reasonably require.

M.  **ACTION AGAINST INSURER, ALTERATION AND ASSIGNMENT**

Except as provided in Section J. above, Alternative Dispute Resolution, no action shall lie against **Insurer** unless, as a condition precedent thereto, there shall have been compliance with all of the terms of this **Policy**. No person or organization shall have any right under this **Policy** to join **Insurer** as a party to any action against the **Insureds** to determine their liability, nor shall **Insurer** be impleaded by the **Insureds** or their legal representative. No change in, modification of, or assignment of interest under this **Policy** shall be effective except when made by a written endorsement to this **Policy** which is signed by an authorized representative of the **Insurer**.

N.  **ENTIRE AGREEMENT**

By acceptance of this **Policy**, the **Insureds** agree that this **Policy** embodies all agreements existing between them and **Insurer** or any of their agents relating to this insurance. Notice to any agent or knowledge possessed by any agent or other person acting on behalf of **Insurer** shall not effect a waiver or a change in any part of this **Policy** or estop **Insurer** from asserting any right under the terms of this **Policy** or otherwise, nor shall the terms be deemed waived or changed except by written endorsement or rider issued by **Insurer** to form part of this **Policy**.



## Underwritten by Scottsdale Insurance Company

A Stock Insurance Company, herein called the **Insurer**

## BUSINESS AND MANAGEMENT INDEMNITY POLICY

## EMPLOYMENT PRACTICES COVERAGE SECTION

In consideration of the payment of premium, in reliance on the **Application** and subject to the Declarations, and terms and conditions of this **Policy**, the **Insurer** and the **Insureds** agree as follows

A. **INSURING CLAUSES**

1. **Employee** Insuring Clause

   **Insurer** shall pay the **Loss** of the **Insureds** which the **Insureds** have become legally obligated to pay by reason of an **Employment Practices Claim** first made against the **Insureds** during the **Policy Period** or, if elected, the **Extended Period**, and reported to the **Insurer** pursuant to Section E.1. herein, for an **Employment Practices Wrongful Act** taking place prior to the end of the **Policy Period**.

2. **Third-Party** Insuring Clause

   In the event **Third-Party** Coverage is affirmatively designated in Item 3. of the Declarations relating to this Coverage Section, the **Insurer** shall pay the **Loss** of the **Insureds** which the **Insureds** have become legally obligated to pay by reason of a **Third-Party Claim** first made against the **Insureds** during the **Policy Period** or, if elected, the **Extended Period,** and reported to the **Insurer** pursuant to Section E.1. herein, for a **Third-Party Wrongful Act** taking place prior to the end of the **Policy Period**.

B. **DEFINITIONS**

1. **Claim** means any:

   a. **Employment Practices Claim**; or

   b. **Third-Party Claim**.

2. **Continuity Date** means the Continuity Date set forth in Item 3. of the Declarations relating to this Coverage Section.

3. **Costs, Charges and Expenses** means reasonable and necessary legal costs, charges, fees and expenses incurred by any of the **Insureds** in defending **Claims** and the premium for appeal, attachment or similar bonds arising out of covered judgments, but with no obligation to furnish such bonds and only for the amount of such judgment that is up to the applicable Limit of Liability. **Costs, Charges and Expenses** do not include salaries, wages, fees, overhead or benefit expenses of or associated with officers or employees of the **Company**.

4. **Employee** means any person who was, now is or shall become:

   a. a full-time or part-time employee of the **Company**, including voluntary, seasonal, and temporary employees;

   b. any individual who applies for employment with the **Company**; and

   c. any natural person who is a leased employee or is contracted to perform work for the **Company**, or is an independent contractor for the **Company**, but only to the extent such individual performs work or services for or on behalf of the **Company**.

Nationwide

5. **Employment Practices Claim** means:

    a. a written demand against an **Insured** for damages or other relief;

    b. a civil, judicial, administrative, regulatory or arbitration proceeding or a formal governmental investigation against an **Insured** seeking damages or other relief, commenced by the service of a complaint or similar pleading, including any appeal therefrom;

    c. a civil proceeding against an **Insured** before the Equal Employment Opportunity Commission or any similar federal, state or local governmental body, commenced by the filing of a notice of charges, investigative order or similar document; or

    d. a criminal proceeding brought for an **Employment Practices Wrongful Act** in a court outside of the United States against any **Insured,** commenced by a return of an indictment or similar document, or receipt or filing of a notice of charges;

brought by or on behalf of an **Employee** in their capacity as such. **Employment Practices Claim** does not include a labor or grievance proceeding, which is pursuant to a collective bargaining agreement.

6. **Employment Practices Wrongful Act** means any actual or alleged:

    a. violation of any common or statutory federal, state, or local law prohibiting any kind of employment-related discrimination;

    b. harassment, including any type of sexual or gender harassment as well as racial, religious, sexual orientation, pregnancy, disability, age, or national origin-based harassment, or unlawful workplace harassment, including workplace harassment by any non-employee;

    c. abusive or hostile work environment;

    d. wrongful discharge or termination of employment, whether actual or constructive;

    e. breach of an actual or implied employment contract;

    f. wrongful deprivation of a career opportunity, wrongful failure or refusal to employ or promote, or wrongful demotion;

    g. employment-related defamation, libel, slander, disparagement, false imprisonment, misrepresentation, malicious prosecution, or invasion of privacy;

    h. wrongful failure or refusal to adopt or enforce workplace or employment practices, policies or procedures, solely as respects employment-related discrimination or harassment;

    i. wrongful discipline;

    j. employment-related wrongful infliction of emotional distress, mental anguish, or humiliation;

    k. **Retaliation**;

    l. negligent evaluation; or

    m. negligent hiring or negligent supervision of others in connection with a. through l. above, but only if employment-related and claimed by or on behalf of any **Employee** and only if committed or allegedly committed by any of the **Insureds** in their capacity as such.

7. **Insured Persons** means all persons who were, now are or shall become:

    a. a director or officer of the **Company**;

    b. any **Employee**; and



    c. the functional equivalent of a director, officer or **Employee** in the event the **Company** is incorporated or domiciled outside the United States.

8. **Insureds** means the **Company** and any **Insured Persons**.

9. **Interrelated Wrongful Acts** means all **Wrongful Acts** that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of facts, circumstances, situations, events, transactions or causes.

10. **Loss** means the damages, judgments, settlements, front pay and back pay, pre-judgment or post judgment interest awarded by a court, and **Costs, Charges and Expenses** incurred by any of the **Insureds**. **Loss** does not include:

    a. taxes, fines or penalties;

    b. matters uninsurable under the laws pursuant to which this **Policy** is construed;

    c. punitive or exemplary damages, liquidated damages awarded by a court pursuant to a violation of the Equal Pay Act, the Age Discrimination in Employment Act or the Family Medical Leave Act, all as amended, or any rules or regulations promulgated thereunder, or similar provisions of any common or statutory federal, state or local law, or the multiple portion of any multiplied damage award, except to the extent that such punitive, exemplary, or liquidated damages or the multiple portion of any multiplied damage award are insurable under the internal laws of any jurisdiction which most favors coverage for such damages and which has a substantial relationship to the **Insureds**, **Insurer**, this **Policy** or the **Claim** giving rise to such damages;

    d. the cost of any remedial, preventative or other non-monetary relief, including without limitation any costs associated with compliance with any such relief of any kind or nature imposed by any judgment, settlement or governmental authority;

    e. amounts owed under any employment contract, partnership, stock or other ownership agreement, or any other type of contract;

    f. disability, social security, workers compensation, medical insurance, retirement or pension benefit payments, or settlement amounts representing benefit payments;

    g. the costs to modify or adapt any building or property to be accessible or accommodating, or to be more accessible or accommodating, to any disabled person;

    h. the cost of creating or reinstating employment;

    i. any amount owed as wages to any **Employee**, other than front pay or back pay; or

    j. any amount for which the **Insured** is not financially liable or legally obligated to pay.

11. **Retaliation** means any actual or alleged response of any of the **Insureds** to:

    a. the disclosure or threat of disclosure by an **Employee** to a superior or to any governmental agency of any act by any of the **Insureds** where such act is alleged to be a violation of any federal, state local or foreign law, whether common or statutory, or any rule or regulation promulgated thereunder;

    b. the actual or attempted exercise by an **Employee** of any right that such **Employee** has under law, including rights under any worker's compensation law, the Family and Medical Leave Act, the Americans with Disabilities Act or any other law relating to employee rights;

    c. the filing of any claim under the Federal False Claims Act or any similar federal, state, local or foreign "whistleblower" law or "whistleblower" provision of any law; or

    d. any legally-protected **Employee** work stoppage or slowdown.

12. **Third-Party** means any natural person who is a customer, vendor, service provider, client, or other business invitee of the **Company**; provided, however, **Third-Party** shall not include any **Employee**.



13. **Third-Party Claim** means:

   a. any written demand for damages or other relief against an **Insured**;

   b. a civil judicial, administrative or arbitration proceeding against an **Insured** seeking damages or other relief, including any appeal therefrom; or

   c. a criminal proceeding brought for an **Employment Practices Wrongful Act** in a court outside of the United States against any **Insured,** commenced by a return of an indictment or similar document, or receipt or filing of a notice of charges;

   brought by or on behalf of a **Third-Party** in their capacity as such.

14. **Third-Party Wrongful Act** means any actual or alleged:

   a. harassment of a **Third-Party**, including but not limited to any type of sexual or gender harassment as well as racial, religious, sexual orientation, pregnancy, disability, age, or national origin-based harassment; or

   b. discrimination against a **Third-Party**, including but not limited to any such discrimination on account of race, color, religion, age, disability or national origin.

15. **Wrongful Act** means:

   a. **Employment Practices Wrongful Act**; or

   b. **Third-Party Wrongful Act.**

C. **EXCLUSIONS**

**Insurer** shall not be liable for **Loss** under this Coverage Section on account of any **Claim**:

1. for actual or alleged bodily injury, sickness, disease or death of any person, or damage to or destruction of any tangible or intangible property including loss of use thereof, whether or not such property is physically injured; provided, however, this exclusion shall not apply to mental anguish, emotional distress or humiliation;

2. alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving:

   a. any **Wrongful Act**, fact circumstance or situation which has been the subject of any written notice given under any other policy of which this **Policy** is a renewal or replacement or which it succeeds in time; or

   b. any other **Wrongful Act** whenever occurring which, together with a **Wrongful Act** which has been the subject of such notice, would constitute **Interrelated Wrongful Acts**;

3. alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving:

   a. the actual, alleged or threatened discharge, dispersal, release, escape, seepage, migration or disposal of **Pollutants**; or

   b. any direction or request that any **Insured** test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**, or any voluntary decision to do so;

   including without limitation any such **Claim** by or on behalf of the **Company**, its securities holders or creditors based upon, arising out of, or attributable to the matters described in this exclusion. Provided, however, this exclusion shall not apply to that part of any **Claim** under this Coverage Section where such



**Claim** is for **Retaliation**.

For purposes of this exclusion, **Pollutants** means any substance exhibiting any hazardous characteristics as defined by, or identified on, a list of hazardous substances issued by the United States Environmental Protection Agency or any federal, state, county, municipal or local counterpart thereof or any foreign equivalent. Such substances shall include, without limitation, solids, liquids, gaseous, biological, bacterial or thermal irritants, contaminants or smoke, vapor, soot, fumes, acids, alkalis, chemicals or waste materials (including materials to be reconditioned, recycled or reclaimed). **Pollutants** shall also mean any other air emission or particulate, odor, waste water, oil or oil products, infectious or medical waste, asbestos or asbestos products, noise, fungus (including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi, but does not include any fungi intended by the **Insured** for consumption) and electric or magnetic or electromagnetic field;

4.  for any actual or alleged violation of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act of 1985, the Occupational Safety and Health Act, all as amended, or any rules or regulations promulgated thereunder, or similar provisions of any common or statutory federal, state or local law; provided, however, this exclusion does not apply to any such **Claim** alleging violations of the Equal Pay Act or **Retaliation**;

5.  alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving any dishonest, deliberately fraudulent or criminal act; provided, however this exclusion shall not apply unless and until there is a final judgment against such **Insured** as to such conduct. If such excluded conduct is established through a final judgment, the **Insured** shall reimburse the **Insurer** for any **Costs, Charges and Expenses**;

6.  alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving any **Wrongful Act** actually or allegedly committed subsequent to a **Takeover**;

7.  alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving:

    a.  any prior or pending litigation or administrative or regulatory proceeding, demand letter or formal or informal governmental investigation or inquiry, including without limitation any investigation by the United States Department of Labor or the United States Equal Employment Opportunity Commission, filed or pending on or before the **Continuity Date**; or

    b.  any fact, circumstance, situation, transaction or event underlying or alleged in such litigation or administrative or regulatory proceeding, demand letter or formal or informal governmental investigation or inquiry, including any investigation by the United States Department of Labor or the United States Equal Employment Opportunity Commission;

8.  alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving any **Wrongful Act**, fact, circumstance, or situation which any of the **Insured Persons** who were, now are, or shall be directors, officers, managers or supervisory employees, had knowledge of prior to the **Continuity Date** where such **Insured Persons** had reason to believe at the time that such known **Wrongful Act** could reasonably be expected to give rise to such **Claim**;

9.  alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving, any actual or alleged responsibility, obligation or duty of any **Insured** pursuant to any workers compensation, unemployment insurance, social security, disability benefits or pension benefits or similar law; provided, however, this exclusion shall not apply to any such **Claim** alleging **Retaliation**; or

10. for that portion of **Loss** which is covered under any other Coverage Section of this **Policy**.

No **Wrongful Act** of one or more **Insureds** shall be imputed to any other **Insureds** for the purpose of determining the applicability of any of the above exclusions.

D.  **LIMIT OF LIABILITY AND RETENTIONS**

    1.  The liability of the **Insurer** shall apply only to that part of **Loss** which is excess of the Retention amount applicable to this Coverage Section, as shown in Item 3. of the Declarations. Such Retention shall be borne



uninsured by the **Insureds** and at their own risk. If different parts of a single **Claim** are subject to different applicable Retentions under this Coverage Section, the applicable Retentions will be applied separately to each part of such **Loss**, but the sum of such Retentions shall not exceed the largest applicable Retention.

2. As shown in Item 3.1. of the Declarations relating to this Coverage Section, the following Limits of Liability of the **Insurer** shall apply:

   a. The amount set forth in Item 3.1.a. relating to this Coverage Section shall be the aggregate limit of liability for the payment of **Loss**, subject to additional payments for **Costs, Charges and Expenses** as further described in subsection b. immediately below.

   b. The amount set forth in Item 3.1.b. relating to this Coverage Section shall be the aggregate limit of liability for the payment of **Costs, Charges and Expenses** in addition to the limit described in subsection a. immediately above; provided, all payments for **Costs, Charges and Expenses** under the additional limits described in this subsection b. shall be excess of the limit described in subsection a. above, and excess of any other available insurance that is specifically excess to this **Policy**. Such excess insurance must be completely and fully exhausted through the payment of loss, including but not limited to defense costs thereunder, before the **Insurer** shall have any obligations to make any payments under the additional limits described in this subsection b.

   c. The amount set forth in Item 3.1.c. of the Declarations relating to this Coverage Section shall be the maximum aggregate limit of liability under this Coverage Section and the Limit of Liability set forth in 3.1.a. and 3.1.b. relating to this Coverage Section shall be a part of and not in addition to the maximum aggregate limit of liability set forth in Item 3.1.c. for this Coverage Section.

3. All **Claims** arising out of the same **Wrongful Act** and all **Interrelated Wrongful Acts** shall be deemed to be a single **Claim,** and such **Claim** shall be deemed to have been made at the earliest of the following times, regardless of whether such date is before or during the **Policy Period**:

   a. the time at which the earliest **Claim** involving the same **Wrongful Act** or **Interrelated Wrongful Acts** is first made; or

   b. the time at which the **Claim** involving the same **Wrongful Act** or **Interrelated Wrongful Acts** shall be deemed to have been made pursuant to Section E.2. below.

4. Payments of **Loss** by **Insurer** shall reduce the Limit(s) of Liability under this Coverage Section. **Costs, Charges and Expenses** are part of, and not in addition to, the Limit(s) of Liability, and payment of **Costs, Charges and Expenses** reduce the Limit(s) of Liability. If such Limit(s) of Liability are exhausted by payment of **Loss**, the obligations of the **Insurer** under this Coverage Section are completely fulfilled and extinguished.

E. **NOTIFICATION**

1. The **Insureds** shall, as a condition precedent to their rights to payment under this Coverage Section only, give to **Insurer** written notice of any **Claim** made against the **Insureds** as soon as practicable, but in no event later than sixty (60) days after such **Claim** is first made against the **Insureds**, or the expiration of the **Policy Period**, whichever is later. If any **Claim** is first made against the **Insureds** during the **Extended Period**, if purchased, written notice to **Insurer** must be given as soon as practicable, but in no event later than sixty (60) days after such **Claim** is first made against the **Insureds**, or the end of the **Extended Period**, whichever is later.

2. If, during the **Policy Period** or the **Discovery Period**, any of the **Insureds** first becomes aware of a specific **Wrongful Act** which may reasonably give rise to a future **Claim** covered under this **Policy**, and if the **Insureds**, during the **Policy Period** or the **Discovery Period**, if purchased, give written notice to **Insurer** as soon as practicable of:

   a. a description of the **Wrongful Act** allegations anticipated;

   b. the identity of the potential claimants;

   c. the circumstances by which the **Insureds** first became aware of the **Wrongful Act**;



    d.  the identity of the **Insureds** allegedly involved;

    e.  the consequences which have resulted or may result; and

    f.  the nature of the potential monetary damages and non-monetary relief;

then any **Claim** made subsequently arising out of such **Wrongful Act** shall be deemed for the purposes of this Coverage Section to have been made at the time such written notice was received by the **Insurer**. No coverage is provided for fees, expenses and other costs incurred prior to the time such **Wrongful Act** results in a **Claim**.

3.  Notice to **Insurer** shall be given to the address specified in Item 8. of the Declarations for this **Policy**.

## F.  SETTLEMENT AND DEFENSE

1.  It shall be the duty of the **Insurer** and not the duty of the **Insureds** to defend any **Claim**. Such duty shall exist even if any of the allegations are groundless, false or fraudulent. The **Insurer's** duty to defend any **Claim** shall cease when the Limits of Liability have been exhausted by the payment of **Loss** including **Costs, Charges and Expenses**.

2.  The **Insurer** may make any investigation it deems necessary and shall have the right to settle any **Claim**; provided, however, no settlement shall be made without the consent of the **Parent Company**, such consent not to be unreasonably withheld.

3.  Notwithstanding subsection 1. above, in the event that any **Claim** is brought as a class action, and all or any part of such **Claim** involves any actual or alleged violation of the Fair Labor Standards Act of 1938, as amended, or any similar state law, regulation or code, then it shall be the duty of the **Insureds** and not the duty of the **Insurer** to defend any such **Claim**.

4.  The **Insureds** agree not to settle or offer to settle any **Claim**, incur any **Costs, Charges and Expenses** or otherwise assume any contractual obligation or admit any liability with respect to any **Claim** without the prior written consent of the **Insurer**, such consent not to be unreasonably withheld. The **Insurer** shall not be liable for any settlement, **Costs, Charges and Expenses**, assumed obligation or admission to which it has not consented. The **Insureds** shall promptly send to the **Insurer** all settlement demands or offers received by any **Insured** from the claimant(s).

5.  If the **Insurer** does not have the duty to defend a **Claim**, then the **Insurer** shall have the right and shall be given the opportunity to effectively associate with, and shall be consulted in advance by, the **Insureds** regarding the defense and negotiation of any settlement of any **Claim**.

6.  The **Insureds** agree to provide the **Insurer** with all information, assistance and cooperation which the **Insurer** reasonably requests and agree that, in the event of a **Claim, the Insureds** will do nothing that shall prejudice the position of the **Insurer** or its potential or actual rights of recovery.

7.  If the Insurer does not have the duty to defend a **Claim** , the **Insurer** shall, on a quarterly basis, advance on behalf of the **Insureds** covered **Costs, Charges and Expenses**, which the **Insureds** have incurred in connection with **Claims** made against them, prior to disposition of such **Claims**. Any advancement of **Costs, Charges and Expenses** shall be subject to the condition that such advanced amounts shall be repaid to the **Insurer** by the **Insureds** severally according to their respective interests if and to the extent the **Insureds** shall not be entitled to coverage for such **Costs, Charges and Expenses** under the terms and conditions of this **Policy**.

## G.  OTHER INSURANCE

1.  For any **Employment Practices Claim**, if any **Loss** covered under this Coverage Section is covered under any other valid and collectable insurance, then this **Policy** shall be primary insurance; provided that with respect to that portion of an **Employment Practice Claim** made against any leased, temporary or independently contracted **Employee, Loss**, including **Costs, Charges and Expenses**, payable on behalf of such **Employee** under this Coverage Section will be specifically excess of and will not contribute with such other insurance, including but not limited to any such other insurance under which there is a duty to defend, unless such insurance is specifically stated to be in excess over the Limit of Liability of this Coverage

Nationwide

Section.

2. For any **Third-Party Claim**, if any **Loss** covered under this Coverage Section is covered under any other valid and collectable insurance, then this **Policy** shall be specifically excess of and will not contribute with such other insurance, including but not limited to any such other insurance under which there is a duty to defend, unless such other insurance is specifically stated to be excess over the Limit of Liability of this Coverage Section.

H. **ALLOCATION**

If the **Insurer** does not have the duty to defend a **Claim**, then the following subsections shall apply to such **Claim.**

1. If, in any **Claim** covered in whole or in part under this Coverage Section, the **Insureds** who are afforded coverage for such **Claim** incur **Loss** jointly with others, or incur an amount consisting of both **Loss** covered by this **Policy** and loss not covered by this **Policy** because such **Claim** includes both covered and uncovered matters, then the **Insureds** and the **Insurer** shall allocate such amount between covered **Loss** and uncovered loss based upon the relative legal and financial exposures and the relative benefits obtained by the parties to covered and uncovered matters.

2. If there can be an agreement between **Insureds** and the **Insurer** on an allocation of **Costs, Charges and Expenses**, the **Insurer** shall advance on a current basis covered **Costs, Charges and Expenses**. If there can be no agreement on allocation of **Costs, Charges and Expenses**, the **Insurer** shall advance on a current basis **Costs, Charges and Expenses** which the **Insurer** believes to be covered under this **Policy** until a different allocation is negotiated or arbitrated.

3. Any negotiated or arbitrated allocation of **Costs, Charges and Expenses** on account of a **Claim** shall be applied retroactively to all **Costs, Charges and Expenses** on account of such **Claim**, notwithstanding any prior advancement to the contrary. Any allocation or advancement of **Costs, Charges and Expenses** on account of a **Claim** shall not apply to or create any presumption with respect to the allocation of other **Loss** on account of such **Claim** or any other **Claim**.



| Underwritten by Scottsdale Insurance Company | | | ENDORSEMENT NO. 1 |
|---|---|---|---|
| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
| EKS3281725 | 2/7/2019 | Excel Test Prep | 29406 |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**ALLOCATION PROVISION**

This endorsement modifies insurance provided under the following:

**GENERAL TERMS AND CONDITIONS**

The following Section O., **ALLOCATION**, is added to the General Terms and Conditions Section.

O.  **ALLOCATION**

1.  In the event the **Insurer** has the duty to defend a **Claim** under any Coverage Section in which both **Loss** that is covered by the applicable Coverage Section and loss which is not covered by the applicable Coverage Section is incurred, either because such **Claim** includes both covered and uncovered matters or because such **Claim** is made against both covered and uncovered parties, then:

    a.  this **Policy** shall pay one hundred percent (100%) of **Costs, Charges and Expenses** incurred by such **Insured** on account of such **Claim**; and

    b.  there shall be a fair and equitable allocation of any remaining loss incurred by such **Insured** on account of such **Claim** between covered **Loss** and uncovered loss based upon the relative legal and financial exposures and the relative benefits obtained.

2.  In the event the **Insured** has the duty to defend a **Claim** under any Coverage Section in which both **Loss** that is covered by the applicable Coverage Section and loss which is not covered by the applicable Coverage Section is incurred, either because such **Claim** includes both covered and uncovered matters or because such **Claim** is made against both covered and uncovered parties, then the **Insured** and the **Insurer** shall use their best efforts to determine a fair and proper allocation as between such insured and uninsured loss, taking into account the relative legal and financial exposures and the relative benefits obtained.

All other terms and conditions of this **Policy** remain unchanged.



| Underwritten by Scottsdale Insurance Company | | | ENDORSEMENT NO. 2 |
|---|---|---|---|
| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
| EKS3281725 | 2/7/2019 | Excel Test Prep | 29406 |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**AMEND DEFINITION OF EMPLOYEE TO INCLUDE INTERNS**

This endorsement modifies insurance provided under the following:

**EMPLOYMENT PRACTICES COVERAGE SECTION**

Section B., **DEFINITIONS**, subsection 4. is replaced by:

4.   **Employees** means any person who was, now is or shall become:

a.   a full-time or part-time employee of the **Company**, including interns, voluntary, seasonal and temporary employees,

b.   any individual who applies for employment with the **Company**, and

c.   any natural person who is a leased employee or is contracted to perform work for the **Company**, or are independent contractors for the **Company**, but only to the extent such individual performs work or services for or on behalf of the **Company**,

All other terms and conditions of this **Policy** remain unchanged.



| Underwritten by Scottsdale Insurance Company | | | ENDORSEMENT NO. 3 |
|---|---|---|---|
| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
| EKS3281725 | 2/7/2019 | Excel Test Prep | 29406 |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### AMEND DEFINITION OF INSURED PERSONS

This endorsement modifies insurance provided under the following:

### EMPLOYMENT PRACTICES COVERAGE SECTION

Under Section **B. DEFINITIONS**, paragraph 7.a. **(Insured Persons)** is replaced by:

    a.  a director, officer, member of the management board, or management committee member of the **Company**;

All other terms and conditions of this **Policy** remain unchanged.



| Underwritten by Scottsdale Insurance Company | ENDORSEMENT NO. 4 | | | |
|---|---|---|---|---|
| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | | AGENT NO. |
| EKS3281725 | 2/7/2019 | Excel Test Prep | | 29406 |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**AMEND DEFINITION OF WRONGFUL ACT**

This endorsement modifies insurance provided under the following:

**EMPLOYMENT PRACTICES COVERAGE SECTION**

It is agreed that Section B., **DEFINITIONS**, Subsection 6., is amended by adding the following:

◦ Wrongful failure to grant tenure;

◦ Failure to provide adequate training;

◦ Defamatory statements in conjunction with an employee reference;

All other terms and conditions of this **Policy** remain unchanged.



| Underwritten by Scottsdale Insurance Company | ENDORSEMENT NO. 5 |
|---|---|

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| EKS3281725 | 2/7/2019 | Excel Test Prep | 29406 |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**AMEND DISCOVERY ELECTION-90 DAYS**

This endorsement modifies insurance provided under the following:

**GENERAL TERMS AND CONDITIONS**

Section H., **DISCOVERY PERIOD**, subsection 2., is replaced by:

2.  As a condition precedent to the right to purchase the **Discovery Period** set forth in subsection H.1. above, the total premium for the **Policy** must have been paid. Such right to purchase the **Discovery Period** shall terminate unless written notice, together with full payment of the premium for the **Discovery Period**, is received by **Insurer** within ninety (90) days after the effective date of cancellation, or, in the event of a refusal to renew, within ninety (90) days after the **Policy** expiration date. If such notice and premium payment is not so given to **Insurer**, there shall be no right to purchase the **Discovery Period**.

All other terms and conditions of this **Policy** remain unchanged.



| Underwritten by Scottsdale Insurance Company | | ENDORSEMENT NO. 6 |
|---|---|---|
| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
| EKS3281725 | 2/7/2019 | Excel Test Prep | 29406 |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### AMEND NOTICE OF CIRCUMSTANCES

This endorsement modifies insurance provided under the following:

### EMPLOYMENT PRACTICES COVERAGE SECTION

Section **E. NOTIFICATION**, subsection **2.** is replaced by:

2. If during the **Policy Period** or the **Discovery Period**, if purchased, any of the **Insureds** first become aware of specific facts or circumstances which may reasonably give rise to a future **Claim** covered under this **Policy** and if the **Insureds**, during the **Policy Period** or the **Discovery Period**, if purchased, give written notice to **Insurer** as soon as practicable of:

   a. a description of the facts, circumstances, or allegations anticipated;

   b. the identity of the potential claimants;

   c. the circumstances by which the **Insureds** first became aware of the facts or circumstances;

   d. the identity of the **Insureds** allegedly involved;

   e. the consequences which have resulted or may result; and

   f. the nature of the potential monetary damages and non-monetary relief;

then any **Claim** made subsequently arising out of such facts or circumstances shall be deemed for the purposes of this Coverage Section to have been made at the time such notice was received by the **Insurer**. No coverage is provided for fees, expenses and other costs incurred prior to the time such facts or circumstances results in a **Claim**.

**All other terms and conditions of this Policy remain unchanged.**



| Underwritten by Scottsdale Insurance Company | ENDORSEMENT NO. 7 |
|---|---|

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| EKS3281725 | 2/7/2019 | Excel Test Prep | 29406 |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**AMEND NOTICE PROVISION - EPL**

This endorsement modifies insurance provided under the following:

**EMPLOYMENT PRACTICES COVERAGE SECTION**

The following is added to Section E. **NOTIFICATION**, subsection 1.:

A **Claim** shall be deemed to have been first made against the **Insureds** on the date an **Insured** who is an executive officer, director or general counsel becomes aware of such **Claim**.

All other terms and conditions of this **Policy** remain unchanged.

EKS-9 (04/08)                    2/27/2019 — Page 1 of 1



| Underwritten by Scottsdale Insurance Company | ENDORSEMENT NO. 8 | | |
|---|---|---|---|
| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
| EKS3281725 | 2/7/2019 | Excel Test Prep | 29406 |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**AMEND NOTICE PROVISION 60 DAYS - EPL**

This endorsement modifies insurance provided under the following:

**EMPLOYMENT PRACTICES COVERAGE SECTION**

Section E., **NOTIFICATION**, subsection 1. is replaced by:

The **Insureds** shall, as a condition precedent to their rights to payment under this Coverage Section only, give **Insurer** written notice of any **Claim** as soon as practicable, but in no event later than sixty (60) days after the end of the **Policy Period**. If any **Claim** is first made against the **Insureds** during the **Extended Period**, if purchased, written notice to **Insurer** must be given as soon as practicable, but in no event later than sixty (60) days after the end of the **Extended Period**.

All other terms and conditions of this **Policy** remain unchanged.



| Underwritten by Scottsdale Insurance Company | ENDORSEMENT NO. 9 |
|---|---|

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| EKS3281725 | 2/7/2019 | Excel Test Prep | 29406 |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**AMEND OTHER INSURANCE - EPL**

This endorsement modifies insurance provided under the following:

**EMPLOYMENT PRACTICES COVERAGE SECTION**

Section G., **OTHER INSURANCE**, is replaced by:

G. **OTHER INSURANCE**

For any **Employment Practices Claim**, if any **Loss** covered under this Coverage Section is covered under any other valid and collectable insurance, then this **Policy** shall be primary insurance.

All other terms and conditions of this **Policy** remain unchanged.



| Underwritten by Scottsdale Insurance Company | | | ENDORSEMENT NO. 10 |
|---|---|---|---|
| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
| EKS3281725 | 2/7/2019 | Excel Test Prep | 29406 |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### AMEND SUBROGATION PROVISION - FINAL JUDGMENT

This endorsement modifies insurance provided under the following:

### GENERAL TERMS AND CONDITIONS

Section L., **ASSISTANCE, COOPERATION AND SUBROGATION**, is deleted in its entirety and replaced by the following:

L. **ASSISTANCE, COOPERATION AND SUBROGATION**

The **Insureds** agree to provide **Insurer** with such information, assistance and cooperation as **Insurer** reasonably may request, and they further agree that they shall not take any action which in any way increases **Insurer's** exposure under this **Policy**. In the event of any payments under this **Policy, Insurer** shall be subrogated to the extent of such payment to all of the **Insureds'** rights of recovery against any person or entity. The **Insureds** shall execute all papers required and shall do everything that may be necessary to secure and preserve such rights, including the execution of such documents as are necessary to enable **Insurer** effectively to bring suit or otherwise pursue subrogation in the name of the **Insureds**, and shall provide all other assistance and cooperation which **Insurer** may reasonably require. In no event, however, shall the **Insurer** exercise its right of subrogation against an **Insured** under this **Policy** unless such **Insured** has been convicted of a deliberate criminal act; or has committed a deliberate fraudulent act, if a final judgment establishes that such deliberate fraudulent act was committed; or has obtained any profit or advantage to which a final judgment establishes the **Insured** was not legally entitled.

All other terms and conditions of this **Policy** remain unchanged.



| Underwritten by Scottsdale Insurance Company | | | ENDORSEMENT NO. 11 |
|---|---|---|---|
| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
| EKS3281725 | 2/7/2019 | Excel Test Prep | 29406 |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**AMEND THIRD PARTY**

This endorsement modifies insurance provided under the following:

**EMPLOYMENT PRACTICES COVERAGE SECTION**

Section **B. DEFINITIONS**, subsection **12**, is replaced by:

12. **Third Party** means any customer, client, or other group or natural person other than an **Employee** or applicant for employment with the **Company**.

**All other terms and conditions of this Policy remain unchanged.**



| Underwritten by Scottsdale Insurance Company | | | ENDORSEMENT NO. 12 |
|---|---|---|---|
| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
| EKS3281725 | 2/7/2019 | Excel Test Prep | 29406 |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### AMEND WARRANTY PROVISION NON-RESCINDABLE COVERAGE

This endorsement modifies insurance provided under the following:

### GENERAL TERMS AND CONDITIONS

Section D., **WARRANTY**, subsection 2. is replaced by:

2. In the event the **Application**, including materials submitted or required to be submitted therewith, contains any misrepresentation or omission made with the intent to deceive, or contains any misrepresentation or omission which materially affects either the acceptance of the risk or the hazard assumed by the **Insurer** under this **Policy**, this **Policy**, including each and all Coverage Sections, shall not afford coverage to the following **Insureds** for any **Claim** alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving, any untruthful or inaccurate statements, representations or information:

   a. any **Insured** who is a natural person and who knew the facts misrepresented or the omissions, whether or not such individual knew of the **Application**, such materials, or this **Policy**;

   b. any **Company** or **Sponsor Company** to the extent it indemnifies any **Insured** referred to in subsection a. above; and

   c. any **Company**, **Sponsor Company**, **Plan**, **Employee Benefit Plan**, or any other entity that is an **Insured**, if any past or present chief executive officer, chief financial officer, general counsel, risk manager or human resources director (or equivalent positions) of the **Parent Company** knew the facts misrepresented or the omissions, whether or not such individual knew of the **Application**, such materials, or this **Policy**.

With respect to any statement, representation or information contained in the **Application**, or in the materials submitted or required to be submitted therewith, and solely with respect to the above exclusion, no knowledge possessed by any **Insured** who is a natural person shall be imputed to any other **Insured** who is a natural person.

The following condition is added:

### NON-RESCINDABLE

The **Insurer** shall not be entitled under any circumstances to rescind any Coverage Section of the **Policy** with respect to any **Insured**. Nothing contained in this section shall limit or waive any other rights or remedies available to the **Insurer**.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms and conditions of this **Policy** remain unchanged.



| Underwritten by Scottsdale Insurance Company | ENDORSEMENT NO. 13 |
|---|---|

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| EKS3281725 | 2/7/2019 | Excel Test Prep | 29406 |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### EMPLOYEE PRIVACY COVERAGE WITH SUB-LIMIT

This endorsement modifies insurance provided under the following:

### EMPLOYMENT PRACTICES COVERAGE SECTION

It is agreed that the Employment Practices Coverage Section is amended as follows:

1. Section A., **INSURING CLAUSES**, is amended by adding the following:

   **Employee Privacy** Insuring Clause

   **Insurer** shall pay the **Loss** of the **Insureds** which the **Insureds** have become legally obligated to pay by reason of an **Employee Privacy Claim** first made against the **Insureds** during the **Policy Period** and reported to the **Insurer** pursuant to subsection E.1. herein, for a **Privacy Wrongful Act** taking place prior to the end of the **Policy Period**.

   **Cost of Employee Notification** Insuring Clause

   **Insurer** shall pay the **Cost of Employee Notification** of the **Insureds** resulting from an **Employee Personal Information Breach** first discovered during the **Policy Period** and reported to the **Insurer** pursuant to subsection E.4. added below.

2. Section B., **DEFINITIONS**, subsection 1. is amended by adding the following:

   **Employee Privacy Claim**

3. Section B., **DEFINITIONS**, subsection 10. is amended by adding the following:

   ◦ **Loss** also includes **Cost of Employee Notification**

4. Section B., **DEFINITIONS**, subsection 15. is amended by adding the following:

   **Privacy Wrongful Act**.

5. Section B., **DEFINITIONS**, is amended by adding the following:



**Cost of Employee Notification** means:

    a.  any reasonable and necessary cost or expense of the **Company** to notify any **Employee** of any **Employee Personal Information Breach** as required under any **Privacy Act**; and

    b.  the cost to notify and monitor the credit reports of any **Employee** who has been the subject of an **Employee Personal Information Breach** for the length of time as set forth under any **Privacy Act**.

**Employee Personal Information** means any personal information not available to the general public of any **Employee** where such non-public personal information can be used to identify such natural person and where such non-public information is solely in the custody, care or control of the **Company** or another entity at the direction and consent of the **Company**. Such **Personal Information** shall include, but not be limited to a natural person's name, address, telephone number, date of birth, social security number, account number, history of account transactions, account balance, account relationships, credit card number, medical records, medical history and any other non-public personal information as set forth in any **Privacy Act**.

**Employee Personal Information Breach** means:

    a.  the unauthorized acquisition, access, use, physical taking, identity theft, mysterious disappearance, release, distribution or disclosure of **Employee Personal Information** which compromises the security or privacy of such **Employee Personal Information**, including, but not limited to:

        i.  the unauthorized and fraudulent taking of **Employee Personal Information** by reason of a breach or failure of any hardware, software, or firmware the **Company** owns, leases or controls on premises or elsewhere or the similar technology of another entity that controls, maintains or stores **Employee Personal Information** at the direction and consent of the **Company**; or

        ii.  the actual unauthorized taking of physical **Employee Personal Information** by any person, employee or entity.

**Employee Privacy Claim** means:

    a.  a written demand against any **Insured** for monetary damages or non-monetary or injunctive relief;

    b.  a civil proceeding against any **Insured** seeking monetary damages or non-monetary or injunctive relief, commenced by the service of a complaint or similar pleading;

    c.  an arbitration proceeding against any **Insured** seeking monetary damages or non-monetary or injunctive relief;

    d.  a civil, administrative or regulatory proceeding, or a formal governmental investigation against any **Insured** commenced by the filing of a notice of charges, investigative order or similar document; or

    e.  a written request to toll or waive any statute of limitations

brought by or on behalf of an **Employee** in their capacity as such and solely alleging a **Privacy Wrongful Act**.



**Privacy Act** means any federal, state or local statutory or common law relating solely to **Employee Personal Information** or any rules or regulations promulgated thereunder, including, but not limited to The Financial Modernization Act of 1999 ("Gramm-Leach-Bliley Act"), the Health Insurance Portability and Accountability Act of 1996 (HIPAA) and Section 1798 of the California Civil Code.

**Privacy Policy** means the internal or publicly accessible written documents that set forth the policies, standards and procedures of the **Company** for collection, use, disclosure, sharing, dissemination and correction or supplementation of, and access to, **Employee Personal Information**.

**Privacy Wrongful Act** means:

    a. the failure of the **Company** to timely disclose an incident or event triggering a violation of a **Privacy Act**; or

    b. failure by the **Insureds** to comply with that part of a **Privacy Policy** that specifically:

        i. prohibits or restricts the disclosure, sharing or selling of an **Employee's Personal Information**;

        ii. requires the **Company** to provide access to **Employee Personal Information** or to correct incomplete or inaccurate **Employee Personal Information** after a request is made by an **Employee**; or

        iii. mandates procedures and requirements to prevent the loss of **Employee Personal Information**.

6. Section E., **NOTIFICATION**, is amended by adding the following subsection:

    ◦ The **Insureds** shall, as a condition precedent to their rights to payment for the **Cost of Employee Notification** under this endorsement, give the **Insurer** written notice of any **Employee Personal Information Breach** as soon as practicable after the **Insured** discovers such **Employee Personal Information Breach**, but in no event later than sixty (60) days after such discovery. The **Insurer** will pay for the **Cost of Employee Notification** sustained by the **Insured** resulting from an **Employee Personal Information Breach** occurring at any time and discovered by the **Insured** during the **Policy Period**. Discovery of the **Employee Personal Information Breach** occurs when an officer, director, Insurance Manager or Risk Manager first becomes aware of facts which would cause a reasonable person to assume that an **Employee Personal Information Breach** covered by this Coverage Section has occurred, even though the exact amount or details of any **Cost of Employee Notification** may not then be known. Discovery also occurs when the **Insured** receives notice of an actual or a potential **Claim** against it alleging facts that, if true, would constitute a covered **Employee Privacy Claim** for a **Privacy Wrongful Act**.

7. The following Section is added to the Employment Practices Coverage Section:

    I. **DUTIES IN THE EVENT OF AN EMPLOYEE PERSONAL INFORMATION BREACH**

    After the **Insured** discovers an **Employee Personal Information Breach** or a situation that may result in an **Employee Personal Information Breach** that may be covered under this Endorsement, the **Insured** must:

        1. submit to an examination under oath at the **Insurers** request and give the **Insurer** a sworn statement of the answers of the **Insured**;



    2.  provide the **Insurer** with a sworn proof of loss within forty-five (45) days after discovery which shall provide, at a minimum:

        a.  the date and circumstances surrounding discovery, including the name(s) of the person(s) making the discovery;

        b.  details of how the **Employee Personal Information Breach** occurred or will occur;

        c.  the amount of actual loss known and an estimate of the total loss expected to result; and

        d.  a description of all known sources of recovery to reduce the **Cost of Employee Notification**;

    3.  provide the **Insurer** with all information, assistance and cooperation as the **Insurer** may reasonably request in the investigation of the **Employee Personal Information Breach** and corresponding **Cost of Employee Notification**;

    4.  not incur any **Cost of Employee Notification** without the written consent of the **Insurer**; and

    5.  notify the police or other appropriate law enforcement authority(ies) if the **Insured** has reason to believe that the **Employee Personal Information Breach** involves a violation of law.

8.  Notwithstanding, Section G., **OTHER INSURANCE**, If any coverage under this endorsement is also covered under any other valid and collectable insurance, then the coverage provided by this endorsement shall be specifically excess of, and will not contribute with, such other insurance, including but not limited to any such other insurance under which there is a duty to defend.

9.  The maximum aggregate Limit of Liability as a result of coverage provided by this endorsement for all **Loss** as a result of all **Employee Privacy Claims** and **Cost of Employee Notification** shall be $10,000, which sum shall be part of and not in addition to the Limit of Liability identified in Item 3.1.a. of the Declarations relating to the Employment Practices Coverage Section, and Item 3.1.b., additional aggregate for **Costs, Charges and Expenses**, shall not be applicable to, nor available for, the coverage provided by this endorsement.

10.  The Retention listed in Item 3.2.a. of the Declarations relating to the Employment Practices Coverage Section for **Employment Practices Claims** applies to each **Employee Privacy Claim** under this **Employee Privacy** Insuring Clause. The Retention amount applicable to the **Cost of Employee Notification** is an amount equal to twenty percent (20%) of the Retention listed in Item 3.2.a. of the Declarations relating to the Employment Practices Coverage Section for **Employment Practices Claims**. The Retention for the **Cost of Employee Notification** shall be applied only once for each discovery of an **Employee Personal Information Breach**.

All other terms and conditions of this **Policy** remain unchanged.



| Underwritten by Scottsdale Insurance Company | | | ENDORSEMENT NO. 14 |
|---|---|---|---|
| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
| EKS3281725 | 2/7/2019 | Excel Test Prep | 29406 |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**IMMIGRATION CLAIM ENDORSEMENT**

This endorsement modifies insurance provided under the following:

**EMPLOYMENT PRACTICES COVERAGE SECTION**

I.  It is agreed that the Employment Practices Coverage Section is amended as follows:

The following is added to Section A., **INSURING CLAUSES:**

**Immigration Claim** Insuring Clause

**Insurer** shall pay the **Costs, Charges and Expenses** of the **Insureds** which the **Insureds** have become legally obligated to pay by reason of an **Immigration Claim** first made against the **Insureds** during the **Policy Period** or, if elected, the **Extended Period**, and reported to the **Insurer** pursuant to subsection E.1. herein, for an **Immigration Wrongful Act** taking place prior to the end of the **Policy Period**.

The following is added to Section B., **DEFINITIONS**, subsection 1.:

**Immigration Claim**.

The following is added to Section B., **DEFINITIONS**, subsection 15.:

**Immigration Wrongful Act**.

The following is added to Section B., **DEFINITIONS**:

**Immigration Wrongful Act** means any actual or alleged violation(s) of the Immigration Control Act of 1986 or any other similar federal or state laws or regulations.

**Immigration Claim** means any criminal investigation of any of the **Insureds** by any governmental agency for actually or allegedly hiring or harboring illegal aliens.

The following is added to Section G., **OTHER INSURANCE**:

For any **Immigration Claim**, if any **Costs, Charges and Expenses** covered under this Coverage Section are covered under any other valid and collectable insurance, then this **Policy** shall be primary insurance.

II.  It is agreed that the DECLARATIONS is amended as follows:

The maximum aggregate Limit of Liability for all **Costs, Charges and Expenses** as a result of all **Immigration Claims** shall be $100,000, which sum shall be part of and not in addition to the Limit of Liability identified in Item 3.1.a. of the Declarations relating to the Employment Practices Coverage Section, and the Limit of Liability identified in Item 3.1.b. of the Declarations relating to the Employment Practices Coverage Section, additional aggregate for **Costs, Charges and Expenses**, shall not be applicable to or available for any **Immigration Claim**.



The following is added to Item 3., Employment Practices Coverage Section, section 2., **Retention**, of the Declarations:

$15,000 each **Immigration Claim**

All other terms and conditions of this **Policy** remain unchanged.



| Underwritten by Scottsdale Insurance Company | | | | ENDORSEMENT NO. 15 |
|---|---|---|---|---|
| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | | AGENT NO. |
| EKS3281725 | 2/7/2019 | Excel Test Prep | | 29406 |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### REMOVAL OF ALTERNATIVE DISPUTE RESOLUTION PROVISION

This endorsement modifies insurance provided under the following:

### GENERAL TERMS AND CONDITIONS

Section **J. ALTERNATIVE DISPUTE RESOLUTION** is deleted in its entirety.

**All other terms and conditions of this Policy remain unchanged.**



| Underwritten by Scottsdale Insurance Company | | | ENDORSEMENT NO. 16 |
|---|---|---|---|
| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
| EKS3281725 | 2/7/2019 | Excel Test Prep | 29406 |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**TOLLING OR WAIVING THE STATUTE OF LIMITATIONS**

This endorsement modifies insurance provided under the following:

**EMPLOYMENT PRACTICES COVERAGE SECTION**

The following is added to Section B., **DEFINITIONS**, subsection 5.:

- a written request received by the **Company** to toll or waive the statute of limitations regarding a potential **Claim**. Such **Claim** shall be commenced by the receipt of such request.

All other terms and conditions of this **Policy** remain unchanged.



| Underwritten by Scottsdale Insurance Company | | ENDORSEMENT NO. 17 |
|---|---|---|

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| EKS3281725 | 2/7/2019 | Excel Test Prep | 29406 |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### WAGE AND HOUR CLAIM COSTS, CHARGES AND EXPENSES ONLY ENDORSEMENT

This endorsement modifies insurance provided under the following:

### EMPLOYMENT PRACTICES COVERAGE SECTION

I.  It is agreed that the Employment Practices Coverage Section is amended as follows:

Section A., **INSURING CLAUSES**, is amended by adding the following:

3.  **Wage and Hour Claim** Insuring Clause

**Insurer** shall pay the **Costs, Charges and Expenses** of the **Insureds** which the **Insureds** have become legally obligated to pay by reason of a **Wage and Hour Claim** first made against the **Insureds** during the **Policy Period** or, if elected, the **Extended Period**, and reported to the **Insurer** pursuant to Section E.1. herein, for a **Wage and Hour Wrongful Act** taking place prior to the end of the **Policy Period**.

Section B., **DEFINITIONS**, subsection 1. is amended by adding the following:

c.  **Wage and Hour Claim**.

Section B., **DEFINITIONS**, subsection 15. is amended by adding the following:

c.  **Wage and Hour Wrongful Act**.

Section B., **DEFINITIONS**, is amended by adding the following:

**Wage and Hour Wrongful Act** means any actual or alleged violation(s) of:

a.  the Fair Labor Standards Act or any other federal, state or local laws, rules or regulations governing or relating to:

i.  the classification of **Employees** for the purpose of determining **Employees'** eligibility for compensation; or

ii.  the payment of wages, including but not limited to the payment of overtime, minimum wages, on-call time, the donning and doffing of uniforms, rest and meal periods, reimbursement of expenses, and any other earnings, tips, reimbursement or compensation of **Employees**;

b.  unfair business practices, unfair competition, conversion or public policy concerning, relating



or arising out of any actual or alleged violations of those matters referenced in paragraph a.i. or a.ii. above.

However, **Wage and Hour Wrongful Act** shall not include actual or alleged violations of the Equal Pay Act of 1963, and any amendments thereto.

**Wage and Hour Claim** means:

    a.  a written demand against an **Insured** for damages or other relief; or

    b.  a civil, judicial, administrative, regulatory or arbitration proceeding or a formal governmental investigation against an **Insured** seeking damages or other relief, commenced by the service of a complaint or similar pleading, including any appeal therefrom;

brought by or on behalf of one or more **Employees** solely alleging any **Wage and Hour Wrongful Act**.

Solely as respects any **Wage and Hour Claim**, Section C., **EXCLUSIONS**, subsection 4. is amended by deleting the following words:

"provided, however, this exclusion does not apply to any such **Claim** alleging violations of the Equal Pay Act or **Retaliation**:"

Section F., **SETTLEMENT AND DEFENSE**, subsection 3. is deleted in its entirety solely as respects any **Wage and Hour Claim**.

Section G., **OTHER INSURANCE**, is amended by adding the following:

For any **Wage and Hour Claim**, if any **Costs, Charges and Expenses** covered under this Coverage Section is covered under any other valid and collectable insurance, then this **Policy** shall be primary insurance.

Section O., **ALLOCATION**, in the General Terms and Conditions Section and Section H., **ALLOCATION**, are deleted in their entirety solely as respects any **Wage and Hour Claim**.

II.  It is agreed that the DECLARATIONS is amended as follows:

The maximum aggregate Limit of Liability for all **Costs, Charges and Expenses** as a result of all **Wage and Hour Claims** shall be $150,000, which sum shall be part of and not in addition to the Limit of Liability identified in Item 3.1.a. of the Declarations relating to the Employment Practices Coverage Section, and the Limit of Liability identified in Item 3.1.b. of the Declarations relating to the Employment Practices Coverage Section, additional aggregate for **Costs, Charges and Expenses**, shall not be applicable to or available for any **Wage and Hour Claim.**

Item 3., Employment Practices Coverage Section, section 2., **RETENTION**, of the Declarations is amended by adding the following:

$25,000 each **Wage and Hour Claim**

All other terms and conditions of this **Policy** remain unchanged.



| Underwritten by Scottsdale Insurance Company | | | ENDORSEMENT NO. 18 |
|---|---|---|---|
| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
| EKS3281725 | 2/7/2019 | Excel Test Prep | 29406 |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**AMENDATORY ENDORSEMENT - CALIFORNIA**

Whenever the term AUTHORIZED REPRESENTATIVE appears beneath a signature line in this policy, it is removed and replaced by the term COUNTERSIGNATURE.

For example:

_____    _____

DATE                                  AUTHORIZED REPRESENTATIVE

is replaced by:

_____    _____

DATE                                  COUNTERSIGNATURE



| Underwritten by Scottsdale Insurance Company | | | ENDORSEMENT NO. 19 |
|---|---|---|---|
| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
| EKS3281725 | 2/7/2019 | Excel Test Prep | 29406 |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### SERVICE OF SUIT CLAUSE

It is agreed that in the event of the failure of the Company to pay any amount claimed to be due under this policy, the Company at the request of the Insured (or reinsured), will submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give the Court jurisdiction. All matters which arise will be determined in accordance with the law and practice of the Court. In a suit instituted against any one of them under this contract, the Company agrees to abide by the final decision of the Court or of any Appellate Court in the event of an appeal.

Pursuant to any statute of any state, territory or district of the United States of America which makes a provision, the Company will designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Insured (or reinsured) or any beneficiary arising out of this contract of insurance (or reinsurance).

The officer named below is authorized and directed to accept service of process on behalf of the Company:

Commissioner of Insurance
45 Fremont Street
23rd Floor
San Francisco, CA 94105

Having accepted service of process on behalf of the Company, the officer is authorized to mail the process or a true copy to:

c/o United States Corporation Company
2710 Gateway Oaks Drive, Suite 150N
Sacramento, CA 95833-3505



## Underwritten by Scottsdale Insurance Company

### POLICYHOLDER DISCLOSURE

### NOTICE OF TERRORISM
### INSURANCE COVERAGE

## TERRORISM RISK INSURANCE ACT

Under the Terrorism Risk Insurance Act of 2002, as amended pursuant to the Terrorism Risk Insurance Program Reauthorization Act of 2015, effective January 1, 2015 (the "Act"), you have a right to purchase insurance coverage for losses arising out of acts of terrorism, as defined in Section 102(1) of the Act: The term "certified acts of terrorism" means any act that is certified by the Secretary of the Treasury - in consultation with the Secretary of Homeland Security, and the Attorney General of the United States - to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

You should know that where coverage is provided by this policy for losses resulting from "certified acts of terrorism," such losses may be partially reimbursed by the United States Government under a formula established by federal law. However, your policy may contain other exclusions which might affect your coverage, such as an exclusion for nuclear events. Under the formula, the United States Government agrees to reimburse eighty-five percent (85%) of covered terrorism losses in calendar year 2015 that exceed the statutorily established deductible paid by the insurance company providing the coverage. This percentage of United States Government reimbursement decreases by one percent (1%) every calendar year beginning in 2016 until it equals eighty percent (80%) in 2020. The premium charged for this coverage is provided below and does not include any charges for the portion of loss that may be covered by the Federal Government under the Act.

You should also know that the Act, as amended, contains a $100 Billion Cap that limits United States Government reimbursement as well as insurers' Liability for losses resulting from "certified acts of terrorism" when the amount of such losses in any one calendar year exceeds $100 billion. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

## CONDITIONAL TERRORISM COVERAGE

The federal Terrorism Risk Insurance Program Reauthorization Act of 2015 is scheduled to terminate at the end of December 31, 2020, unless renewed, extended or otherwise continued by the federal government. Should you select Terrorism Coverage provided under the Act and the Act is terminated December 31, 2020, any terrorism coverage as defined by the Act provided in the policy will also terminate.

**IN ACCORDANCE WITH THE ACT, YOU MUST CHOOSE TO SELECT OR REJECT COVERAGE FOR "CERTIFIED ACTS OF TERRORISM" BELOW:**

**NOTE**: In this state, a terrorism exclusion makes an exception for (and thereby provides coverage for) fire losses resulting from an act of terrorism. Therefore, if you reject the offer of terrorism coverage, that rejection does not apply to fire losses resulting from an act of terrorism coverage for such fire losses will be provided in your policy.

I hereby elect to purchase certified terrorism coverage for a premium of $83.00. I understand that the federal Terrorism Risk Insurance Program Reauthorization Act of 2015 may terminate on December 31, 2020. Should

X

Nationwide

| | that occur my coverage for terrorism as defined by the Act will also terminate. |
| | I hereby reject the purchase of certified terrorism coverage. |

_____
Policyholder / Applicant's Signature*

_____
Print Name*

_____
Date*

Excel Test Prep
_____
Named Insured / Firm

EKS3281725
_____
Policy Number, if available

*If rejected, signature required & completed form must be faxed to E-Risk Services @ (973) 252-5146. Please contact your broker with any questions.

Nationwide®