UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EXCEL TEST PREP., <br><br> Plaintiff, <br><br> v. <br><br> SCOTTSDALE INSURANCE COMPANY, <br><br> Defendant. | Case No. 25-cv-00037-JST <br><br> **ORDER GRANTING MOTION TO DISMISS** <br><br> Re: ECF No. 16 |

Before the Court is Defendant Scottsdale Insurance Company's motion to dismiss. ECF No. 16. The Court will grant the motion.

## I.   BACKGROUND

Plaintiff corporation Excel Test Prep offers standardized test preparation services to the public. ECF No. 1 ¶ 6. Excel and Scottsdale Insurance entered into a contract for insurance coverage. *Id.* ¶ 8; ECF No. 1-1. The policy covers "Employment Practices" claims and "Third-Party" claims up to a $1,000,000 limit for loss and a $1,000,000 limit for costs, charges, and expenses, with a $15,000 retention for each Employment Practices Claim and a $25,000 retention for each Third-Party Claim. ECF No. 1-1 at 4, 15. A separate section of the policy, Endorsement 17, modifies the policy's coverage of "Wage and Hour Claims," a subset of Employment Practices Claims, by imposing a $25,000 retention for each Wage and Hour claim and a $150,000 "maximum aggregate Limit of Liability for all Costs, Charges and Expenses as a result of all Wage and Hour Claims." ECF No. 1-2 at 44.

In 2019, a former employee, Charlie Meas, filed a class action lawsuit ("Meas Litigation") against Excel alleging a variety of California Labor Code and California Business and Professional Code violations, including failures to:  provide meal periods, provide rest periods,

pay overtime wages, pay minimum wages, pay timely wages, pay wages due to discharged and quitting employees, maintain required records, and furnish accurate wage statements. ECF No. 1 ¶ 13; ECF No. 1-2.

Scottsdale Insurance defended Excel in the Meas Litigation but applied the retention for a "Wage and Hour Claim" as set forth in Endorsement 17. ECF No. 1 ¶ 14. The Meas Litigation eventually settled for a total payment of $200,000. *Id.* ¶ 15; ECF No. 1-3. Scottsdale Insurance, however, refused to contribute to the $200,000, instead taking the position that the $150,000 limit under Endorsement 17 applied to the entire action and that "the Policy was, therefore, maxed out." ECF No. 1 ¶ 15.

Excel filed its complaint on January 2, 2025, asserting claims for: (1) breach of contract, and (2) breach of the implied covenant of good faith and fair dealing and bad faith liability. On March 14, 2025, Scottsdale Insurance moved to dismiss. ECF No. 16. Excel opposed the motion, ECF No. 22, and Scottsdale Insurance filed a reply, ECF No. 25. On May 21, 2025, the Court found the matter suitable for disposition without oral argument, *see* Civil L.R. 7-1(b), and took it under submission without a hearing.

## II.     JURISDICTION

The Court has jurisdiction under 28 U.S.C. § 1332.

## III.    LEGAL STANDARD

### A.      Motion to Dismiss

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal "is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Factual allegations need not be detailed, but the facts must be "enough to raise a right to relief above the speculative level." *Twombly*, 558 U.S. at 555.

1    "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678.  While this standard is not "akin to a 'probability requirement' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 555 U.S. at 556).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops shorts of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 558 U.S. at 557).

In determining whether a plaintiff has met the plausibility requirement, a court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the plaintiff.  *Knievel v. ESPN*, 393 F.3d at 1072.

**B.    Insurance Policy Interpretation**

Under California law, the interpretation of an insurance contract is question of law for the courts.[1]  *See Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995).  "While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply." *Bank of the W. v. Superior Ct.*, 2 Cal. 4th 1254, 1264 (1992).  "If contractual language is clear and explicit, it governs." *Id.*  In addition, "[t]he terms in an insurance policy must be read in context and in reference to the policy as a whole, with each clause helping to interpret the other." *Sony Comput. Entm't Am. Inc. v. Am. Home Assurance Co.*, 532 F.3d 1007, 1012 (9th Cir. 2008) (citing Cal. Civ. Code § 1641; *Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.*, 5 Cal. 4th 854, 867 (1993); *Palmer v. Truck Ins. Exch.*, 21 Cal. 4th 1109, 1115 (1999)).

"[I]f the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it." *Bank of the W.*, 2 Cal. 4th at 1264–65 (quoting Cal. Civ. Code § 1649).  "Only if this rule does not resolve the ambiguity do [courts] then resolve it against the insurer." *Id.* at 1265.  California courts have cautioned that language in a contract "cannot be found to be

---

[1] The parties agree that California law governs the underlying insurance policy.  *See* ECF No. 16 at 13; ECF No. 22 at 2.

ambiguous in the abstract," and courts should "not strain to create an ambiguity where none exists." *Waller*, 11 Cal. 4th at 18–19.

## IV.    DISCUSSION

### A.    Breach of Contract

The elements of a cause of action for breach of contract under California law are: "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011).  "[A]bsent an actual withholding of benefits due, there is no breach of contract." *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1151 n.10 (1990) (citation and emphasis omitted).

Excel alleges a breach of contract claim based on Scottsdale Insurance's failure to reimburse Excel for the $200,000 settlement of the Meas Litigation.  The premise of Excel's claim is that "the Meas Litigation involved wage claims and non-wage claims" and thus the "non-wage claims," including the "reimbursement claims," should have been covered under the policy's $2,000,000 coverage limit with a $15,000 retention, instead of being subject to Endorsement 17's $150,000 coverage limit and $25,000 retention.  ECF No. 1 ¶ 21.

Scottsdale Insurance moves to dismiss, arguing that, as a matter of law, the policy's definition of Wage and Hour Claims encompasses all claims brought and settled in the Meas Litigation, and thus Endorsement 17—and its lower coverage limit—applies.  ECF No. 16 at 14.

The definition of "Wage and Hour Claims," as defined in Endorsement 17, includes claims brought for

> actual or alleged violation(s) of . . . the Fair Labor Standards Act or any other federal, state or local laws, rules or regulations governing or relating to . . . the payment of wages, including but not limited to the payment of overtime, minimum wages, on-call time, the donning and doffing of uniforms, rest and meal periods, reimbursement of expenses, and any other earnings, tips, reimbursement or compensation of Employees.

ECF No. 1-2 at 43.  Excel urges that "[t]he limitations of Endorsement 17 apply only to 'the payment of wages,'" ECF No. 22 at 6 (quoting ECF No. 1-2 at 43–44), and that according to California caselaw, "wages" and "reimbursements" are "mutually exclusive terms."  ECF No. 22

4

at 6 (quoting *Naro v. Walgreen Co.*, No. 22-cv-3170-JST, 2023 WL 3579315, at *2 (N.D. Cal. Feb. 9, 2023)). Thus, according to Excel, the Meas Litigation's reimbursement claims fall outside the reach of Endorsement 17, or at a minimum, there exists "a patent ambiguity in Endorsement 17" that must be resolved against Scottsdale Insurance. ECF No. 6 at 7–8.

The Court disagrees. The contract's definition of "Wage and Hour Claims" explicitly encompasses labor law violations relating to "*reimbursement* of expenses, and any other . . . *reimbursement* or compensation of Employees." ECF No. 1-2 at 43 (emphasis added). That "California law defines business expenses and wages in mutually exclusive terms," *Naro*, 2023 WL 3579315, at *2, while a correct statement of law, is irrelevant here, because the Court is not interpreting California statutes but instead the contractual agreement reached by the parties. The Court's job in that respect is to "look first to the language of that contract in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it." *Waller*, 11 Cal. 4th at 18 (citing Cal. Civ Code § 1638). Here, the Court finds that the policy's definition of "Wage and Hour Claims," by its plain meaning, unambiguously includes reimbursement claims.

Plaintiff relies on *Southern California Pizza Co., LLC v. Certain Underwriters at Lloyd's, London*, 40 Cal. App. 5th 140 (2019), but that case does not compel a different result. There, the insurance policy's wage and hour exclusion applied to "violation(s) of any . . . wage and hour or overtime law(s)." *Id.* at 145. The exclusion did not, however, define "wage and hour . . . laws," which "necessarily require[d] [the Court] to interpret the meaning" of that phrase. *Id.* at 147. Employing the dictionary definition of the word "wage," and in light of the California Supreme Court's characterization of "reimbursement of business expenses as nonwage claims," the court concluded that "one would not expect [statutes providing for reimbursement of business expenses] to be wage or hour laws in the absence of an express indication otherwise." *Id.* at 150. Here, though, there is such "an express indication otherwise"—that is, the language of the policy, which expressly includes "reimbursement of expenses" in its definition of "Wage and Hour Claims." ECF No. 1-2 at 43. Accordingly, *Southern California Pizza Co.* is inapposite.

Because Endorsement 17 applies to the Meas Litigation, including the reimbursement claims asserted therein, Excel is not entitled to additional payment as a matter of law, and thus the

5

1  Court will dismiss Excel's breach of contract claim. *See Love*, 221 Cal. App. 3d at 1151 n.10
2  ("[A]bsent an actual withholding of benefits due, there is no breach of contract." (citation and
3  emphasis omitted)).

### B. Breach of Implied Covenant of Good Faith and Fair Dealing

Excel's second claim alleges breach of the implied covenant of good faith and fair dealing. Under California law, a breach of the implied covenant of good faith and fair dealing in the insurance context has two elements: "(1) benefits due under the policy must have been withheld and (2) the reason for withholding benefits must have been unreasonable or without proper cause." *Love*, 221 Cal. App. 3d at 1151. Because Excel has failed to allege that benefits were withheld, the "threshold requirement" for a bad faith claim has not been met. *See id.* at 1151–52; *see also Waller*, 11 Cal. 4th at 35 (affirming that a bad faith claim cannot be maintained unless policy benefits are due under the contract). The Court will also dismiss this claim.

## V. LEAVE TO AMEND

Under Federal Rule of Civil Procedure 15(a), leave to amend is freely given when justice so requires. The Court may, however, "exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). In this case, it seems doubtful that Excel could establish an entitlement to further policy coverage of the Meas Litigation. Still, in line with Rule 15(a)'s liberal policy for allowing amendment, *see Foman v. Davis*, 371 U.S. 178, 182 (1962), the Court will dismiss without prejudice and grant leave to amend.

## CONCLUSION

For the foregoing reasons, the Court grants Scottsdale Insurance's motion and dismisses the complaint without prejudice.

Leave to amend is granted solely to cure the deficiencies identified in this order. Any amended complaint must be filed within 28 days of this order. If no amended complaint is filed, the Court will dismiss the case with prejudice.

1   The case management conference scheduled for August 26, 2025 is continued to
2   November 4, 2025 at 2:00 p.m.  An updated joint case management statement is due October 28,
3   2025

**IT IS SO ORDERED.**

Dated:  August 25, 2025



JON S. TIGAR
United States District Judge

7